Our next case on this morning's docket is the case of Bank of America v. Jody Porter, et al. And we have Mr. Tom Cassidy for the appellant. And we have Mr. Brent Holmes for the appellate. You may proceed, Mr. Cassidy. Good morning, Your Honors. Good morning. May it please the Court. My name is Tom Cassidy. I'm the attorney for the plaintiff, the appellant in this case, Bank of America. This case arises, this appeal arises from a mortgage foreclosure case filed in the Circuit Court of Fayette County in 2012. The borrower, who is the appellee in this case, filed an answer shortly after the complaint, and then didn't file a motion for leave to file an affirmative defense for two years. The Court may ask itself, why did it take so long for the borrower to file the affirmative defense? There's a simple answer to that, and that's in 2014, about two years after the complaint was filed. In this case, the Second District issued a decision in First Mortgage Company v. Dena. And in that decision, the Second District held that under the Residential Mortgage Licensing Act, that a mortgage that was originated by a lender who had not held a proper license is void. So after that decision came out in 2014, the borrower in this case, the appellee, decided they want some of that. They want to be in on this void mortgage. There were a lot of borrowers around that time who had filed motions for leave to file affirmative defenses, claiming that their lender wasn't a proper license at the time of origination. So the borrower in this case is no different than those other borrowers that wanted to somehow have their mortgage declared void, as anybody would, I believe. Did you try the case below, or were you involved in the trial court? The second half of it, yes. There was another attorney in my office who previously handled the case. So your office handled the case from the get-go. That's correct. There are three main issues that are presented in this appeal. The first is a question of diligence. As the plaintiff in the case, we brought a 1401 motion to vacate a summary judgment order that was granted in favor of the dependent borrower. Under 1401, the trial court in Fayette County held that we did have a meritorious defense. We did very timely, but we weren't diligent in presenting our original argument to the circuit court. Second, beyond diligence, there's a matter of statutory clarification. Due to an amendment to the Residential Mortgage Licensing Act of 1987, the amendment was passed in July of 2015, which clarified the statute. Finally, there's an issue of fairness that's involved here. The appellee presented demonstrably false allegations in their affirmative defense that the original lender was not licensed, when, in fact, the original lender was licensed. And why did it take you so long to file a response, then, if it was so obviously false? Judge, Your Honor, it wasn't necessarily obviously false. The original lender in this case was Taylor, Bean, and Whitaker Mortgage Corporation, which is not default. And the loan had changed hands a few times and changed servicers. And so the plaintiff, Bank of America, was not Taylor, Bean, and Whitaker. They had to go back and try to find the records and the license. To my third issue, which is fairness, it should be pointed out, and I'll get into it in a moment, that neither the borrower or the defendant nor the plaintiff was able to find the license, which not only goes to fairness, but also to diligence. And in this case, the plaintiff didn't present any information to the court at all, but the defendant presented false information to the court that the defendant's allegation was that the original lender was not licensed, which is at this point undisputed that the defendant was licensed. The trial court even wrote that in its order, denying the plaintiff's motion to vacate the summary judgment. Why didn't you then appeal the judgment? Well, Your Honor, we hadn't found it. And there was even a 304A finding answered. So we hadn't found it. We did request continuance after continuance. The trial court was receptive to those continuances, but at some point decided to fast-track the case through summary judgment rather than give us another continuance. We still didn't have the license. We didn't have the evidence of the license. Similarly, as the borrower or defendant did not have evidence that the license did not exist, we did not have evidence that the license did exist, and we did not appeal for that reason. We did find that evidence just a few short months. I think it was three months after the order granting summary judgment. The trial court had granted the order in January but then modified it in March. We found the license in June. So it was only a few short months later that we found the license and brought it to the trial court's attention that he had made his judgment based on false information. How was it that you were able to find out the information that they were licensed on? So, Your Honor, we were able to do a more thorough search of the Department of Professional Regulations website that we had previously been unable to use properly. So the website is extremely difficult to use. And since then, they've actually changed their website to be more user-friendly. You have to type in the words exact. So Taylor, Beene, and Whitaker has an ampersand sign rather than A-N-D. It's my assumption, and I don't know, but I believe that it's likely the case that the defendant's attorney made the same search that we made and came up with nothing, that the license was not on the website. But that did not mean that the license did not exist. When I took over the case, I was able to conduct a more thorough search of the website, and I was able to find that the license did, in fact, exist. So that's how we were able to find it. Neither party had been able to find it for years. And eventually, when we did find it, that's really the heart of the case is that it's the truth. It's what reality is, is that the license did exist and always existed. So for the defendant to claim that we were not diligent in finding the license is frankly absurd when they didn't find it either, and we presented nothing to the trial court. They presented the false information, claiming that the license did not exist. And the plaintiff in the case argued that it simply is more egregious to allege false information than to allege nothing. But, counsel, what would be the standard of review on the finding of facts as to due diligence? Your Honor, as I wrote in my brief, the standard of review would be the de novo standard in this court. The standard for Section 1401 petition, which is what we brought, depends on whether there is a factual challenge or legal challenge. If it's purely a legal challenge, the standard of review is de novo. So we have, in this case you'll see, which I haven't gotten to the statutory clarification yet, but we have a legal challenge, which is that the Residential Mortgage Licensing Act had always held that the lack of a license does not equal avoid mortgage. So, as there is both a legal challenge and a factual challenge here, it would be a de novo standard, as set out in my brief. As I can segue into my next issue, which is the statutory clarification, which is equally important in this case, as is the diligence requirement. In 2015, in July 2015, the legislature overturned the Deena case, effectively. The legislature amended the Residential Mortgage Licensing Act in 1987 to further clarify that a mortgage that had been originated by a lender that is not licensed is not void. The Deena court had held that it was void if the original lender did not have a license. The legislature said, no, that's not what we had meant when we wrote the law in 1987. So, the state of the law, so the defendant, in their brief, in this court, has argued that it's a retrospective statute, and that since we already had a final order, we can't go back now and change that. That it be a form of grace to cut it. But, the statute was amended not in a retrospective manner, but it was simply clarified. So, the legislature had stated in July 2015 that it had always been the case that the Residential Mortgage Licensing Act of 1987 had held that a mortgage originated by a non-licensed lender does not result in a void mortgage. So, that was always the case. The defendants had claimed that what we're trying to do is retrospectively change something, and that's not what happened. That's not what was written into the statute. Finally, the issue of fairness in this case, it really goes to the truth of what occurred in this case. It goes to the abuse of discretion by the circuit court in ignoring the truth when we brought promotion of Medicaid judgment, when we brought the facts, the actual facts, the truth to the court. The court looked at those and just ignored them. The court ignored the facts. The court ignored the truth. And the court seemingly was okay with allowing his judgment to stand when he knew that it was based on false information. And that's why we brought this appeal, because it's clear to everyone, all of the parties and the court, that the judgment was based on information that was false, and that neither party had found the correct information up until the time the judgment was entered. And the judge then, as is often said, fast-tracked the case for summary judgment. What do you mean by fast-tracked the case? Because it seemed to me that there were a number of continuances, and there were a number of non-responsiveness from your side as well. Judge, I just simply mean that there was no trial, that the judge had decided that there was no issue of fact when it went clearly. Now we know there was an issue of fact. Well, what I'm reading in the judge's order is that the judge advised the final entry before entering the summary judgment, after a number of continuances and the fact that you never did respond to the RTAs, was that if there was no pleading filed in 21 days, the court would rule on the motion for summary judgment. And there was just no response on your part. Yes. Either nay, or there was a problem accessing the website, or whatever. There was just no response. Your Honor, and I would argue to the court today that our no response, our lack of response, is significantly better in comparison to what was in front of the circuit court at the time, which was false. But you're not saying that it was false in the sense that they knew it was false, are you? I'm saying that they made a bare allegation with no evidence whatsoever. But you did nothing in response to their bare allegation. We did not respond to their bare allegation. That is correct, Judge, or Your Honor. And it goes to whether the circuit court should have entered summary judgment, which we're not here to argue that today. We're here to argue whether they should have vacated summary judgment after the facts came to light. So what we're talking about is diligence, back to diligence. And you did nothing to support the fact now that you say that it was difficult to access the website. Your Honor, we were faced with the decision of whether to go the route of the defendant and to just present allegations to the court. We didn't have the license at the time that judgment was entered. We didn't have the information that it existed. We didn't know that it existed or it didn't exist. But you were aware that the court was going to enter a summary judgment if you made no response, and you made no response. We were aware that the court would analyze the case and make a decision. Well, generally, when there's a hearing for a ruling on a motion for summary judgment, the opponent makes some response. Your Honor, we didn't want to present something false to the court. No, I'm not saying false. I'm saying that you could have some response that you had diligently been attempting to access the information. I guess essentially what you now are asserting. Well, we had requested several continuances, and we requested a continuance again, which the court denied at that time when judgment was entered. We also looked at the motion for summary judgment and saw that it was fair and that the court really should have looked at the evidence and the arguments contained in the summary judgment, which contained almost nothing except the bare allegations. And the court really should have, and again, we're not here to argue that today, but the court should have denied that motion as it contained almost nothing. Was there a hearing held and you made that argument at the hearing? It was a brief hearing. I was not present at the hearing, but it was very brief. I don't believe that there were no arguments at all. As to your Honor mentioning the request to admit, which was included in the court's order, I believe, just in passing, the borrower defendant in this case has extensively argued that the request to admit were deemed admitted simply by the plaintiff's failure to respond to them. That's not the case. They were never deemed admitted. They were not the reason for the court's entry of summary judgment. The court very specifically set out in its order for summary judgment that it was basing its decision on First Mortgage Company versus Dena and that the court very specifically found that the lender did not have a license, which all parties now know that was not the truth. So the court did not mention the request to admit in its order denying our motion to vacate the summary judgment either. So the request to admit did not have any – were not a factor in the court's decision. The request to admit, I'll point out, were never deemed admitted. Had they even gotten to that point, there was never a motion to deem them facts. Had we gotten to that point, of course, we would have argued that an issue of ultimate fact could not have been deemed admitted. The purpose behind Rule 216, the request to admit rule, is to narrow the issues to get to trial. It's not to decide a case based on Rule 216. It's simply to narrow the facts that can be examined at trial. And in this case, we didn't have that narrowed, and therefore that's why the judge in Fayette County did not mention the request to admit. So the defendant in the case argues extensively that because of the request to admit going unresponded to, that the summary judgment was proper based on this legal fiction of facts. And again, we know that those facts were untrue. So there are two reasons why, two main reasons why the decision of the circuit court should be reversed, the decision that denied our motion to vacate the summary judgment. The first is that diligence, we should not be held to a hyper-diligent status. In this case, we have a subjective analysis of what is diligent because neither party was able to find the license. So we know that the plaintiff in the case was held to a higher standard of diligence than the defendant in the case. The defendant who presented the false information, the plaintiff who presented no information. The court essentially looked at the two parties and said, well, plaintiff, you're the one whose finger was pointed at most recently, so judgment will be entered against you. The defendant had made fair allegations, and simply from those allegations, because the plaintiff didn't respond, it was the most recent party that its finger pointed at that judgment was entered against that party. It's a fundamental issue of fairness and abuse of discretion. But because you didn't respond, the court was in no position to know why you didn't respond. Now you're telling us it was because you were diligently trying to access the information off the Web site, which was very difficult or impossible. But by not responding to the court and just ignoring the summary judgment hearing, essentially, the court had no way of knowing. It's fair enough, Your Honor. However, looking at the motion for summary judgment, you can see that it is very fair and that it does not contain any evidence whatsoever. It is... But the purpose of the 2-1401 is not to do something that you could have done, but for negligence or inadvertence or whatever, a mistake, but something you could have readily done before, because we're supposed to get on with justice. Your Honor, the purpose of the 2-1401 in this case was to present facts to the trial court, which had they been known at the time the court presented or the court entered judgment, it would have changed the judgment. The court would not have entered judgment had the court known the facts, which we later found, which were never known throughout the case. I agree that is one of the basic reasons for it, but diligence is also a major consideration if something is to be undone. It's understood, Your Honor. However, I would submit that the plaintiff in the case should not be held to what I'm calling hyper-diligence, should not be held to a level of diligence that is so much more exaggerated than the level of diligence that the defendant in this case was held to. I'll point out also that the defendant was given leave after two years to file this affirmative defense, and the plaintiff only had six months or so to research it and to find the license. So with that being said, I ask that the decision of the trial court of Fayette County be reversed. We'll have the opportunity to read about Mr. Cassidy. Thank you. Mr. Holmes. It pleases the board and the counsel. My name is Brent Holmes, and I represent Tracy Porter, the defendant in this case. The seminal case, the only Supreme Court seminal case on this issue under 2-1401 is Smith v. Arum, a 1986 case. And I'm reasonably certain that this court's law clerks in shepherdizing the Smith case would have found a very, very recent opinion out of the first district that was issued August the 9th of 2016. I would ask leave to cite this case to the court. It was not decided until after all briefings had been submitted. It's K.N.M. Holdings, Inc. v. James, 2016, L.F. 1st, 143008. It quotes and cites extensively to the Supreme Court decision of Smith, and it is on all fours with the decision of the circuit court in this case, as well as McLean, and following the rule. Well, I don't think we're going to allow you to argue it, but you can supplement it. Motion, give 10 days. Give 10 days. 10 days. 10 days. Thank you. I think that in appellate work, oftentimes the strength or the lack of strength of the appellant's position can be discerned in many ways, in important ways, by reviewing the reply that is filed by the appellant. And I think that is certainly the situation in this case. Because one would expect that in the reply brief, Bank of America would respond substantively and hopefully persuasively from the appellant's standpoint to rebut the argument and the cases cited by Tracy Porter and Herbert. But in reviewing the reply brief in this case, it was a challenge to come up with a word to describe it, and I think probably the most accurate word to describe it is a screed. Counsel for the plaintiff suggests that the standard of review is a de novo review, but we pointed out in the appellate's brief that a de novo review would have been appropriate for the summary judgment decision of the court. But since the Bank of America did not appeal from that summary judgment order, it's not reviewable. The standard of review for this case is abuse of discretion. The Ohio Supreme Court has pointed that out. This is an abuse of discretion standard. And so as this court stated, there have been various descriptions of what it means to have an abuse of discretion, but this court in the Crickton case said abuse of discretion is where the court acted in an arbitrary or fanciful fashion or where no reasonable person would take the views adopted by the trial court. Other cases have been described in saying that the trial judge ignored recognized principles of law, acted arbitrarily without employing conscientious judgment. There is one thing that I think is very clear in this record, and that is that the circuit court acted conscientiously in arriving at a decision which was based upon the law and applying the facts as discerned from the record. What Bank of America wants to forget about in its appeal of this case is that not only was it required to establish AmeriCorps' defense, but it also had to establish that it exercised due diligence in presenting this defense to the circuit court in the original action and due diligence in filing the Section 2-1401 petition for relief. Smith v. Arun is crystal clear on that issue. There must be shown diligence both at the trial court level and diligence post-trial in obtaining information and presenting it diligently to the trial court. And so in the reply brief, Bank of America almost entirely ignores the factual discussion of this crucial issue. And we suggest to the court that the court should ignore any argument by Bank of America that is not supported by the record. Bank of America here stands today and in their brief claims difficult in using the website and discovering the licensure. But there is nothing that Bank of America filed in the underlying action regarding that whatsoever. Not only did Bank of America fail to show that they acted with any due diligence, but they failed to show any diligence whatsoever, a total, complete absence of any diligence. And nothing was done until the motion to enforce this judgment was filed by Tracy. And in their amended motion, 102-1401, they filed an affidavit of a law clerk stating that on July 16, 2015, he finds that Taylor, Bean, and Whitaker in fact had a license. He looked at the website and found it. Now, the trial court did not abuse his discretion in finding a lack of due diligence on this record. Bank of America received its assignment of the mortgage on January 17, 2012. And as the court pointed out, even at that early date, Bank of America knew or should have verified the status of Taylor, Bean, and Whitaker, whether or not they were licensed, had been licensed in the state of Illinois as a mortgage lender. But for sure, but for sure, Bank of America should have been addressing that issue and presenting its defense to the court once the second amended defense was filed, affirmative defense, I'm sorry, second affirmative defense was filed by Tracy Porter and then subsequently her motion for summary judgment. And there was no race to judgment here because it took six months before a final ruling on that. And during that six-month period, Bank of America disregarded the extensions that the court provided at Bank of America's request. And the facts in this case in terms of not granting relief under 2-1401 are really more compelling than those in the Illinois Supreme Court Smith v. Aroon case because that case involved a default judgment being entered. Summons had been served and received by the defendant. The defendant didn't do anything. And the process of the court eventually moved on to get a default judgment on the issue of liability and eventually a judgment on damages and then later a garnishment action to enforce the judgment, as the Illinois Supreme Court said. You know, you claim that the plaintiff took advantage of you because you didn't get notice of the hearing on damages or that they were going to take action. And the court said, wait a minute, it's your responsibility to keep track of your case. You got served. It's your obligation to follow the processes of the court. In this case, without a shadow of a doubt, Bank of America knew what the issue was, knew what the plaintiff was presenting, the request to admit, and the motion for summary judgment, and literally did nothing other than asking the court for extensions of time to do something. And what's the court supposed to do after granting multiple extensions of time and even warning Bank of America, if you don't get your response on file, the court's going to rule on this. What more was the court supposed to do? And, again, the reply brief doesn't address the fact that a mistake or a negligence on the part of Bank of America is no basis for review, for relief. And, in fact, negligence on the part of the party's attorney is no basis for relief under 214.01. So perhaps Bank of America has reforced against its attorneys. If Bank of America isn't responsible for this. On the other hand, if Bank of America is responsible, then it has nobody to blame but itself. Counsel suggests there should be some relapsation of the due diligence requirement, but as the Smith v. Heron case has pointed out and the cases that have subsequently cited Smith v. Heron, there is no relapsation of due diligence unless there is an affirmative showing that a party engaged in fraud or active concealment. In this case, nothing could be further from the truth. This was information that was available to Bank of America from its absent or could have been obtained by public record. This is, in fact, much less compelling than even the case in Gonsalves v. Saab. Counsel says, well, we now know it was a mistake, and we should be relieved of the consequences of that. But in Gonsalves v. Saab, which we cited in our brief, summary judgment had been granted for the defendant. And after that summary judgment was granted, sometime later, apparently the plaintiff went out and took a deposition of a person with knowledge and then asked for 2-1401 relief from the court. And in that case, the defendant conceded that that testimony, had it been before the court on the motion for summary judgment, that would have been sufficient to cause the court to deny the summary judgment request. However, the court found and determined that the plaintiff had not been diligent in obtaining this evidence, and the requested 2-1401 relief was denied. So the situation as the court found it with regard to the issue of diligence in the trial court during the underlying proceeding was that Bank of America filed no response to the request to invent the facts. It filed no response to the motion for summary judgment. And so what you take away from this is you don't ignore and disregard the rules, the Supreme Court rules, or the orders of the court. The court has a right to expect the parties will follow the Supreme Court rules and comply with its orders. Bank of America has shown no reasonable excuse for failing to determine that Taylor, Bean, and Whitaker was licensed. Bank of America made no effort at all to present any excuse, much less any reasonable excuse, in the underlying action. And likewise, like Smith v. Aaron, nothing was done by the plaintiff until—or by the defendant in that case, here the plaintiff— until in Smith, garnishment actions had been filed. There was no due diligence in presenting any defense or coming to the court and saying, gee, you entered a judgment, it's now finally appealable, but you made it an error, and we have acted diligently in presenting this to the court. Even in the Jusic v. Flores case, the First District case from 2002, the court found that a two-and-a-half-month delay in filing a 2-1401 motion did not demonstrate diligence. The trial court did not impede Bank of America from filing any response. Tracy Porter did not impede Bank of America from filing any response or in failing to respond to the request of Whitman. What conclusion? The inescapable conclusion is that Bank of America showed an indifference to or disregard for the circuit court's process. And like Smith v. Aaron, it cannot now come before the court, and now this Court under Section 2-1401, petition and request relief and obtain relief under the state-of-the-record case. And in the reply brief, there was no attempt to distinguish or cite any cases, which we have cited, the Yockin v. Townsley case, that a 2-1401 petition cannot be used to correct errors of law. It's there to correct errors of fact that had diligence been exercised and presented to the court that correction of those errors of fact could have been made. The Dena case was front and center when the motion for summary judgment was filed. It was cited in the motion for summary judgment. The court relied upon it. That was the controlling law at the time the judgment was entered. And the fact that counsel now says, well, maybe the law has changed or subsequent legislative action has been taken, does not in any way provide any support for granting a 2-1401 petition. That would be attempting to retroactively change the final order from which no appeal had been taken, which is the pre-judicata principles of collateral stop laws that would apply. And as we pointed out in our brief, really chaos would ensue if parties thought that they could somehow gain influence and obtain legislation after final judgments had been entered that would have the effect of changing the result in judgments that have been rendered, final judgments that have been rendered by the courts of law in the state. So it is respectfully submitted that this court should affirm the decision of the circuit court in denying the section 2-1401 petition. Thank you. Mr. Cassidy. Thank you, Your Honors. I have just a few quick remarks as to what counsel has just stated. Counsel has stated a few things that I want to address, whether just at the outset, whether Bank of America has any recourse against its attorneys. If anyone has any recourse against its attorney, it's the defendant when the defendant's attorneys presented false information in court pleadings, in the firm of defense and in the post-presentation. You keep saying false. You're not trying to also presume that there's any fraud involved in that statement? I have not used that word. Well, I know you haven't. The information was incorrect that was presented. And the defendant has an obligation to present correct facts in his pleadings and not false facts. The plaintiff's attorney, North Plaintiff, presented false information to the court. We simply did not provide information to the court. That much is clear. But it wasn't false. As the defendant's counsel said here today, apparently it was so easy to find this information and that we were inadequate in our diligence and our search. If the information was so easy to find, why then did the defendant present the false information in his affirmative defense and in his motion for summary judgment? Why wasn't the correct information provided by the party moving for summary judgment? If it was such a simple task, as the defendant makes it seem, then why wasn't the right information presented to the court? The only party that presented the correct information to the court was the plaintiff, and we did it late. We did it later than judgment, but within the two years allowed by Section 214. The counsel here today stated that 1401 is to correct errors of fact. To correct errors of fact. I could not agree more. That is one of the purposes of 1401. And that is what we are trying to do here. We are trying to correct not only an error of fact that the circuit court relied upon, but also an error of law in the further clarification by the legislature of the Residential Mortgage Licensing Act. The counsel has also stated today that chaos would ensue if we were able to go back and reverse this judgment. It's the purpose of 1401 to reverse judgments that were wrongfully decided. It was wrongfully decided on facts. It was wrongfully decided on the law. That is the entire purpose of 1401. And it's clear that there was no use of discretion. The circuit court was presented with information in our Motion of Vacant Summary Judgment Order that showed that he simply was not correct in deciding facts and was not correct in deciding the law. The law had been clarified by the legislature of all bodies to clarify the law. That is the one that we should listen to. That the legislature had come down after the Dena case and said, no, no Dena court. You decided it wrong. And in this case, it's the same situation that the circuit court decided this case wrong. Based on the Residential Mortgage License Act of 1987, it does not hold that a mortgage is void if the lender is unlicensed. However, in this case, we have a licensed lender. So in failing to vacate his own order, the court did abuse his discretion. He was presented with information that shows his judgment obviously was incorrect. It was obviously not the correct facts. Obviously not the correct laws. And that has to be an abuse of discretion. Thank you. Thank you, Mr. Faxon and Mr. Holmes. Thank you both for your briefs and arguments. And we take the matter under advisement.